DORCAS A. WINCHELL v. WILLIAM CLARK.

*Deed—Water-rights—Erection of dam—Nuisance—Abatement.*

1. The right of a land-owner to sever the right to a water-power from a particular portion of his land cannot be doubted. *Hall v. City of Ionia,* 38 Mich. 498, 499.
2. The unlawful flowing of land by the erection of a dam, and the consequent injury to the water-privileges of the land-owner, is a nuisance, which he has the right to abate by the removal of the dam.
3. This case involves the construction of deeds and the relative rights of several grantees to water-rights thereunder, and an examination of the entire opinion is essential to a.correct understanding of the remaining questions decided.

Case made from Calhoun. (Hooker, J.) Argued November 10, 1887. Decided January 5, 1888.

Trespass for the removal of a dam alleged to be a nuisance. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*M. D. Weeks* (*F. P. Monfort,* of counsel), for appellant.

*N. B. Gardner* (*Miner & Stace,* of counsel), for defendant.

MORSE, J. The plaintiff sued in justice's court for damages arising from an alleged trespass upon her property, in that the said defendant, with force and arms, entered her close, and tore down and destroyed a certain stone dam thereon, erected and maintained by her, and used to dam up the waters of the Kalamazoo river for manufacturing purposes.

The defendant gave notice that, at the time of the alleged trespass, he was in possession of the premises where the dam was located; that the dam wrongfully overflowed his premises, and that, if he committed any act as charged in the plaintiff's declaration, such act was only committed in lowering said dam so that it would not cause an overflow of his premises, which he had a right to do; that plaintiff had no right or title to erect a dam there, and no color of right or title to any water-power at or below the forks of the Kalamazoo river, and that such dam was erected and maintained by the plaintiff below such forks without right and unlawfully; and that the sole right to such water-power, and to erect dams at or below the forks, and all right of flowage incident thereto, were at the time of the alleged trespass, and now are, indefeasibly vested in him and his copartner, one Manly S. Amsden; and that the estate of the plaintiff, if she has any, is servient to the estate of himself and Amsden.

The case was thereupon certified to the circuit court for the county of Calhoun for trial.

The circuit judge filed the following findings of fact:

"1. On July 21, 1842, one George Hannahs became the owner of certain premises and water-rights on the Kalamazoo river at Albion, Calhoun county. The river is formed by the junction of two streams called, respectively, the East and West forks. The course of the river below the forks is

north-west. This included land on both sides of the river
extending from a point north of Erie street, a street crossing
the main river below the forks east and west, to a point some
distance above Ingham street, a street crossing the East fork
north and south some distance above the junction of the
streams, a portion of that east of the river forming a triangle
bounded north by Erie street, and south and west by the river
and East branch.

"2. The conveyance of these lands also conveyed the fol-
lowing in these terms, viz:

"'Together with all the rights, privileges, and immunities
of water-power on the East branch of the Kalamazoo river,
with all the rights ever possessed by parties of the first part
hereto of erecting a dam on said East branch of the Kala-
mazoo river, and also at or below the forks of said river: *Pro-
vided*, nevertheless, that such dam below or at the forks shall
not arise higher than a level of two inches below the foot of
the apron of the present dam on the South branch of said
stream; hereby giving and granting all rights and privileges
necessary for the erection and maintenance of said dam or
dams on said East branch, and at or near said forks, as afore-
said, and of joining them to the opposite bank.'

"3. November 19, 1857, George Hannahs and wife con-
veyed to David and Walter Peabody a portion of these lands,
viz.:

"The undivided two-thirds of the following, to wit: Begin-
ning at the center of a culvert in the M. C. R. R., south of
block 33, in the village of Albion, running thence south-
easterly, along the south-westerly line of blocks 48 and 60, to
the center of Erie street; thence to the center of the Kalama-
zoo river; thence north-westerly along the center of said river
to a point opposite a stake standing at the mouth of a brook
running under said culvert; thence northerly to said stake;
thence north-easterly to the place of beginning. Also the
undivided two-thirds of block 48 in said village.

"All of this land was included in the land described in
the first finding, but it does not include the triangular piece
of land therein described. Said deed further conveyed the
undivided two-thirds part of so much land as may be neces-
sary for the construction of one or more races or channels
for water for the improving or using the water power, to be
drawn from the East branch of the Kalamazoo river, or from
said river at or below the forks thereof, extending from the
center of Ingham street, with the necessary privileges of con-
structing, using, repairing, and enjoying the same.

" Also thereby giving, granting, and conveying the undivided two-thirds part of all the rights. privileges, and immunities possessed by the parties of the first part of the waterpower on the East branch of the Kalamazoo river at or below the forks thereof, with the privilege of erecting and maintaining one or more dams on said East branch, and at or below the forks of said river, in accordance with the provisions of the deed to said George Hannahs: ' *Provided,* that no such dam shall be erected or maintained in such a manner, nor of such a height, as to interfere with the use of the water-power at the Newburg mill, owned by M. Hannahs and Edwin H. Johnson, with the water as it flows from said mill; and provided, further, that such dam at or below the forks · shall not be constructed so as to raise the water higher than a level of two inches below the foot of the apron to the present dam on the South branch.

" ' The said party of the first part does also convey the undivided two-thirds part of all the rights and privileges necessary for the erection of such dam or dams on said East branch, and at or below the forks of said river, and joining the same to the opposite bank.'

" 4. Said Walter and David Peabody thereafter constructed a race about 12 feet wide from a dam above Ingham street across said triangular parcel to Erie street, or north thereof, where they erected mills. The triangular parcel was not otherwise occupied.

" 5. On January 21, 1859, George Hannahs executed and delivered to William Hannahs a mortgage upon the following, viz.: The undivided one-third of the Gothic Mills (being the same referred to in the third finding), with all the lands and appurtenances thereto belonging, known and described as commencing at the south-west corner of lot 7, in block 60, . in Erie street, Albion village; thence west to the center of the Kalamazoo river; thence down the center of said river to the mouth of a brook which enters the said river near block 33; thence up said brook to the M. C. R. R.; thence east and south along said R. R., along the westerly side of blocks 38, 48, 55, and 60, to the place of beginning, including block 48, being what is known as the ' Reservation for Mill Purposes ' on the east side of said river, with all rights of waterpower connected therewith. (This does not include the triangular parcel described.)

" Also a piece of land known as the ' Reservation,' containing eight acres, lying between the Kalamazoo river above Erie street and the mill-race of Hannahs & Peabody. (This

is a portion of said triangular parcel.) Said mortgage included other premises not necessary to be described. The parcel described in plaintiff's declaration is a part of the triangular parcel of land, and is covered by this mortgage. Said mortgage was for $4,000, payable in installments, all to become due at option of mortgagee if default for 10 days was made in principal or interest.

" 6. March 6, 1861, George Hannahs conveyed the undivided one-third of the premises to David and Walter Peabody, the description being in all respects the same as in his former deed to them. It did not include the triangular parcel, and was subject to the mortgage above referred to.

" 7. February 18, 1865, the mortgaged premises were conveyed on foreclosure sale by commissioner to William Hannahs. The whole of the mortgaged premises appear to have been deeded, and both of the Peabodys were parties to the suit. It was conceded upon the trial that but one-third was conveyed. It was also conceded that the proceedings were regular. The descrip ion was identical with that in the mortgage. The parcel described in plaintiff's declaration was included.

"8. On February 20, 1865, George Hannahs and wife, by warranty deed conveyed, to Dorcas A. Winchell, the plaintiff, for $1,100, all of the land between the race and the river, and extending from Erie to Ingham streets.

" 9. February 22, 1865, William Hannahs by quitclaim deed conveyed to Dorcas A. Winchell, the plaintiff, the same premises, specifically described as follows. viz. :

" Commencing at the center of the Kalamazoo river on the south line of Erie street; thence up the center of the river to the forks; thence up the South branch of said river to the line of Ingham street, or the west line of W. H. Brockway's lot; thence north to the race bank; thence down the south side of said mill-race to the south side of Erie street; thence west to the place of beginning,—containing about ten acres, be the same more or less, being known as the ' Reservation,' lying between the mill-race of Hannahs & Peabody (so-called) and the Kalamazoo river. The premises described in plaintiff's declaration are a portion of the lands above described.

"10. May 17, 1865, the plaintiff and her husband conveyed a portion of the ten acres above described to Joseph William Clark, the defendant, said parcel extending from the race to the center of the river, excepting and reserving the rights and privileges conveyed from George Hannahs and

wife by deed to David and Walter Peabody, November 19, 1867.

"11. November 30, 1866, Walter Peabody and wife conveyed their interest in the premises to David Peabody, the description being the same as that in the deeds from George Hannahs to them. This was a quitclaim deed.

"12. June 20, 1870, David Peabody and wife conveyed the same premises, by similar description, to James W. Sheldon. This deed provided that a mortgage held by Sheldon should not merge.

"13. July 8, 1871, a deed upon foreclosure was executed by the circuit court commissioner to James W. Sheldon. David Peabody, Augusta A. Peabody, Adeline S. Peabody, William Hannahs, Marvin Hannahs, John W. Hall, and Adeline S. Peabody, as executrix of Walter Peabody, were parties to the suit. The premises were described as in the deeds to the Peabodys.

"14. February 11, 1871, William Hannahs and wife quitclaimed the same premises by a similar description to said James W. Sheldon.

"15. March 10, 1881, said James W. Sheldon and wife deeded substantially the same premises, together with the water-privileges, by identical description, to Manly S. Amsden and Joseph W. Clark, the defendant.

"16. The premises described in the tenth finding bordered and included a portion of the river at and above the forks, and were higher up the stream than the premises described in plaintiff's declaration.

"17. Sometime after this deed was made and delivered to defendant, plaintiff erected a dam across said river, below the forks, extending from the premises described in her declaration to the opposite bank. Said dam was erected sometime from 1865 to 1868, there being no proof to fix the time more definitely. It was built without defendant's consent and against his wishes.

"18. This dam caused the water to flow defendant's land where water had not previously been accustomed to flow above said dam, to the injury of the grass growing thereon.

"19. This dam was maintained by the plaintiff until February, 1882, when it was torn down by the defendant without plaintiff's consent.

"20. At this time plaintiff was in possession of the premises described in her declaration.

"21. The plaintiff was damaged one hundred and seventy

dollars by the destruction of said dam, if defendant had no right to destroy the same."

His conclusions of law were as follows:

"1. November 19, 1857, George Hannahs was seized in fee simple of all the premises and rights of water described in findings of fact numbered 1 and 2.

"2. The effect of the conveyance from George Hannahs to David and Walter Peabody was to vest in them in fee-simple the undivided two-thirds of the premises and water-rights described in the third finding of fact (leaving the other one-third in said George Hannahs), called subsequently, for convenience, the 'Gothic Mill Property.' George Hannahs remained sole owner of the land between the race, when dug, and river, subject to such water-rights as he by said deed conveyed to the Peabodys, including the land afterwards conveyed to Winchell.

"3. The mortgage executed January 21, 1859, constituted a lien in favor of William Hannahs upon the premises subsequently conveyed to Winchell above referred to, and upon the undivided one-third of the premises and rights described in the deed to Peabody, belonging to George Hannahs.

"4. The deed of March 6, 1861, from George Hannahs conveyed to David and Walter Peabody the equity of redemption in the undivided one-third of the premises and rights, two-thirds of which had been previously conveyed by said George Hannahs to them. It did not convey the equity of redemption in the other premises included in the mortgage, the same remaining in George Hannahs.

"5. The effect of the foreclosure proceedings was to vest in William Hannahs the premises described in the mortgage, viz., undivided one-third of Gothic Mill property, and rights of water, and the premises afterwards conveyed to Winchell.

"6. The deed from George Hannahs to Winchell, February 20, 1865, conveyed at most an equity of redemption in the premises therein described. She became owner in fee-simple of the same on receiving deed from William Hannahs, February 22, 1865, subject to the water-rights.

"7. On February 22, 1865, the title was as follows, viz.: David and Walter Peabody owned undivided two-thirds of the Gothic Mill property with water-rights, including right to erect two dams. William Hannahs owned undivided one-third of same. Dorcas A. Winchell owned the land between the race and the river (i. e., thread of stream) from Erie to

Ingham streets, subject to the rights of Peabodys, which neither Hannahs could convey. The deed from William Hannahs at *most* conveyed to Winchell the premises discharged of his share or interest in pre-existing water-rights. It did not convey any of these rights beyond those which ordinarily attach. Winchell acquired no right to flow any other land than her own, nor any right to connect a dam with the opposite bank, nor to erect a dam beyond the thread of the stream. The rights of the Peabodys were unimpaired, and, whether they could abut a dam against Winchell's premises or not, they undoubtedly had right to flow same by erection of dam on their own land below.

"8. May 17, 1865, deed from Winchell to Clark conveyed estate in fee-simple to defendant, construed in light of existing circumstances. Winchell excepted from the conveyance the rights of Peabodys' two-thirds interest, but made no attempt to reserve or except the other one-third of the water-right. She has no right to flow defendant's land under that deed.

"9. The effect of the deed from Walter Peabody to David Peabody, dated November 30, 1866; that from David Peabody and wife to James W. Sheldon, dated June 20, 1870; the mortgage therein described; the commissioner's deed on foreclosure, dated July 8, 1871; and the quitclaim deed from William Hannahs, dated February 11, 1871,—was to vest the fee to the mill property and mill privileges in James W. Sheldon, except as discharged by the deed from Hannahs to Winchell before mentioned, to which rights Manly S. Amsden and the defendant succeeded by deed dated March 10, 1881.

"10. Amsden & Clark have the legal right to build a dam below or at the forks wherever they have or may acquire the right to join the east bank of the stream.

"11. The dam erected by the plaintiff invaded their rights to the water-privilege, and was unlawful as against them.

"12. Clark having purchased the interest of the Peabodys, the effect is to give him the right to prevent the parcel bought from Winchell from being flowed by any one except his partner, Amsden.

"13. In flowing this land and injuring the water-privilege, plaintiff's dam became a nuisance which defendant might lawfully abate.

"14. Defendant's acts being lawful, judgment should be rendered in favor of the defendant for costs."

The first question to be examined and decided is whether the plaintiff, under the conveyances to her, acquired any right to the water-privileges below the forks of the Kalamazoo river, and which were originally, as far as this record shows, in George Hannahs.

I have set forth in full the findings of the fact, as the facts therein are stated as clearly and concisely as they well could be.

Mrs. Winchell derives her title to the land she holds through the mortgage executed by George to William Hannahs.

At the time this mortgage was made and delivered, George Hannahs had been dispossessed of two-thirds of these water-privileges by his own voluntary deed to the Peabodys. In such deed he expressly conveyed these water-rights by describing them, and independently of the usual clause in a deed granting the "hereditaments and appurtenances thereunto belonging or in anywise appertaining," which clause was contained in this deed, and following the description of the lands and the water-rights conveyed. The mortgage also contained an express mention of the water-privileges, although there was no specific description of the same. The commissioner's deed upon foreclosure sale followed the mortgage in this respect. In examining the description of the lands in the mortgage, and also in the commissioner's deed, it is found that the parcel of land conveyed to Mrs. Winchell, and known as the "Reservation," lying between the mill-race and the Kalamazoo river, is described separately by itself, and following, and not connected with, the sentence conveying the water-rights; the clause granting such rights being connected expressly with and to other lands.

The warranty deed of George Hannahs and wife, and the deed of William Hannahs, to plaintiff, make no mention whatever of any water-rights or privileges. It would seem as if there was no intention of granting any such rights with the lands conveyed to plaintiff.

We are inclined to think that the claim of defendant's counsel is correct, that the water-privileges were intended to be, and were, severed and disconnected from this parcel of land by George Hannahs. This land did not pass to the Peabodys by the deed which granted to them two-thirds of these water-rights. And, as before said, in the mortgage the remaining one-third was expressly mentioned as being appurtenant to other lands, and had no relation or connection in that instrument with this reservation land.

The water-rights did not expressly pass to plaintiff by either of the deeds under which she holds. The most that her counsel claim is that it passed under the general appurtenant clause of William Hannahs' deed; for, when George conveyed to her in 1865, he had before that time expressly conveyed the remaining one-third to the Peabodys by a deed executed in 1861, and his title was also cut off by the mortgage foreclosure.

The deeds from George and William to Mrs. Winchell seem to bear out the claim that at the time these deeds were made the intention of the parties was to simply convey to her the bare land, without any water-rights as far as building dams and using water-power were concerned. The subsequent action of William Hannahs in deeding this right to others confirms this claim.

It will also be seen from the first paragraph in the finding of the court that the right to all this water-power was specifically described in the deed by which George Hannahs obtained it, and such right was not made expressly appurtenant to this parcel of land or any other. The right of the Hannahs to sever this right to the water-power below the forks of the Kalamazoo river from this particular piece of land cannot now be doubted. *Hall v. City of Ionia,* 38 Mich. 493, 498, 499 and cases there cited.

It will be seen by the third paragraph of the findings of fact that in 1857, when the conveyance of two-thirds of this

water-right to the Peabodys was made, there was already located upon the east or north branch of the river, above the forks, a water-power known as the "Newburg Mill," with the use of which the Peabodys could not interfere by the express terms of the grant to them, and also a dam upon the south or west branch, which restricted their use of the river at or below the forks so that any dam they might erect should not be constructed so as to raise the water higher than a level of two inches below the foot of the apron to such dam upon the south or west branch.

The race constructed by the Peabodys, and in full operation before the plaintiff obtained title or possession of her premises, ran from a dam on the east or north branch to a point below the forks, and below the plaintiff's land, to help propel mills there erected and operated by the Peabodys.

It may well be claimed, as it is by defendant's counsel, that the existence of these two dams, restricting the use of water-power at and below the forks as provided in the conveyance to the Peabodys, and the subsequent erection of these mills below the forks, and the building and maintaining of the race, and the conveyances by all the parties, are circumstances which, taken together, show an abandonment on the part of the owners of these water-rights of any idea of building any dam or using any water-power upon the river where it abuts the land conveyed to plaintiff, and that the full use of the water-power intended under the different grants of the same, and by the owners of the water-rights, had been put in operation by the Peabodys in the building of the mills and the race aforesaid.   They undoubtedly had the right to control the water in this way, if they saw fit, and, by withholding from Mrs. Winchell any right in the use of the water for mill or manufacturing purposes, in their deeds to her, prevent her from using any of the water-power, which they held absolutely and not appurtenant to any land.   It is not claimed that she ever had any right to the two-thirds first deeded to

the Peabodys, and William Hannahs, who held the other third, could convey it or not convey it to her, as he chose. The deed of the land did not pass it, as has been shown, and it was in our opinion never appurtenant to the premises held by her or any part thereof.

It follows further, in accordance with this view, and under the findings of the court, that this water-right or privilege is now the property of the defendant and his partner, Amsden.

The defendant, Clark, obtained the strip of land bordering upon the river above the premises occupied by the dam of plaintiff, before said dam was built, and acquired such strip of the plaintiff. When he bought, therefore, his land was not burdened by any flowage from this dam, and his deed imposed no servitude upon his premises, except the water-rights of the Peabodys, which he and his partner now hold.

The dam of plaintiff, at the time it was destroyed, had not been maintained long enough for her to acquire a right by adverse user to keep it there. It is not shown to have been built, for a certainty, before 1868, and it was torn down in 1882.

The circuit judge was right in holding, as a conclusion of law, that the dam erected by the plaintiff invaded the rights of Clark & Amsden to their water-privileges, and that its maintenance as against them was unlawful.

He was also correct in the proposition that the flowing of defendant's land and the injuring of his water-privileges by the dam of plaintiff was a nuisance which he had the right to abate. Wood, Nuis. (2d ed.) 976, 977; *Adams v. Barney,* 25 Vt. 231; *Hodges v. Raymond,* 9 Mass. 316; *Colburn v. Richards,* 13 Id. 420; *Elliot v. Fitchburg R. R. Co.,* 10 Cush. 195.

The judgment of the court below is affirmed, with costs.

SHERWOOD, C. J., and CHAMPLIN, J., concurred. CAMPBELL, J., did not sit.